IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JESSICA MONROE, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ANDREW K. MONROE DECEASED, AND AS NEXT FRIEND OF K. MONROE AND L. MONROE, MINORS and SUSAN BRADEN INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MICHAEL T. BRADEN, AND HEATHER BRADEN HATLEY, LOWELL BRADEN, AND FAYE BRADEN, INDIVIDUALLY<br><br>　　Plaintiffs<br><br>vs.<br><br>CESSNA AIRCRAFT COMPANY and<br><br>　　Defendant | § § § § § § § § § § § § § § § § § § § § § | CASE NO. 2:05CV250 |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Cessna Aircraft Company's ("Cessna") Amended Motion to Dismiss Under Rule 12(b)(6) (Docket No. 10). For the reasons discussed below, the Court **DENIES** Cessna's motion.

**BACKGROUND**

On July 8, 2003, a Cessna 172S model aircraft, Federal Aviation Administration ("FAA") registration number N166ME, crashed near McKinney, Texas killing the plane's two occupants, Andrew K. Monroe and Michael T. Braden. It is undisputed that a bird struck the aircraft about ten minutes after take off. According to Plaintiff Jessica Monroe ("Monroe"), the bird strike caused

1

structural damage that in turn led to the crash of the aircraft. In August 2005, Monroe filed this wrongful death and survivor action claiming Cessna was negligent for not providing sufficient warnings with regard to bird strikes and in flight structural damage, for failing to design and manufacture the aircraft to reduce potential structural damage resulting from a bird strike, and for failing to design and manufacture the aircraft to mitigate the risk of landing with structural damage. Furthermore, Monroe alleges Cessna is liable under strict product liability for failing to adequately warn, failing to adequately instruct, and for inadequate design. Cessna filed this Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6) of the Federal Rules of Civil Procedure "on the grounds that Congress preempted the entire field of aviation safety and that, as a matter of law, Plaintiffs cannot make claims against Cessna based on state tort law."

## STANDARD OF REVIEW

Dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate where a party fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion to dismiss, the court construes the complaint in favor of the plaintiff and all facts pleaded are taken to be true, no matter how improbable those facts. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Lowrey v. Tex. A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, "in order to avoid dismissal for failure to state a claim . . . a plaintiff must plead specific facts, not mere conclusory allegations." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000). A court "will thus not accept as true conclusory allegations or unwarranted deductions of fact." *Id.*

**APPLICABLE LAW**

"Consideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.'" *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (citing *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947)). Congressional intent is the paramount factor when analyzing federal preemption. *See id.* Congress's intent to preempt may be either expressed or implied. *See Cipollone,* 505 U.S. at 525. Implied preemption includes two doctrines, field preemption and conflict preemption. *See English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990).

**ANALYSIS**

Cessna does not contend that Monroe's state law claims are expressly preempted by the Federal Aviation Act of 1958 (the "Act"). Therefore, the Court will only consider whether Monroe's state law claims are impliedly preempted. With regard to implied preemption, the Fifth Circuit has stated,

> We do not hesitate to find preemption when Congress has *expressly* stated its intent. But we have a general hesitancy to *infer* a preemptive intent. Especially as to state regulation of matters of health and safety, "we start with the assumption that the historic police powers of the States were not to be superseded by the [federal law] unless that was the clear and manifest purpose of Congress."

*Perry v. Mercedes Benz of N. Am., Inc.*, 957 F.2d 1257, 1261 (5th Cir. 1992)(citing *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 715 (quoting *Rice*, 331 U.S. at 230).

**A. Field Preemption**

The doctrine of field preemption applies when a state law "regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *English*, 496 U.S. at 79.

Congress's intent to preempt an entire field can be inferred when a "'scheme of federal regulation . . . [is] so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it,' or where an Act of Congress 'touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Id*. (quoting *Rice*, 331 U.S. at 230). However, the Supreme Court recently questioned the application of field preemption stating that "field pre-emption is itself suspect, at least as applied in the absence of a congressional command that a particular field be pre-empted." *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Maine*, 520 U.S. 564, 614-15 (1997) (stating that recent Supreme Court decisions have rejected field pre-emption in the absence of statutory language expressly requiring it).

1. Relevant Case Law on Congressional Intent to Preempt

Neither the Supreme Court nor the Fifth Circuit have held that the Federal Aviation Act preempts the entire field of aviation safety. The Fifth Circuit's most recent case addressing federal preemption under the Federal Aviation Act, *Witty v. Delta Airlines, Inc.*, 366 F.3d 380 (5th Cir. 2004), discusses preemption in the narrow context of warnings given to passengers on commercial airliners. In *Witty*, Plaintiff Milton Witty ("Witty") brought suit against Delta Airlines Inc. ("Delta") after allegedly developing Deep Vein Thrombosis ("DVT") while on board a Delta flight from Louisiana to Connecticut. 366 F.3d at 381. Witty claimed Delta was negligent for failing to warn passengers about the risks of developing DVT during flight, for not providing adequate leg room to prevent DVT, and for not allowing passengers to exercise their legs. *Id*.

The court held that Witty's negligence claim for failure to provide adequate leg room was preempted by the express preemption clause of the Airline Deregulation Act of 1978 ("ADA"),

which amended the Federal Aviation Act. The ADA states, "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to price, route or service of any air carrier that may provide air transportation under this subpart." *Id*. at 382-83 (citing 49 U.S.C. § 41713(b)(1)). In holding that the negligence claim was preempted, the court found that the claim imposed a standard "relating to price." *Id*. at 383. The court further held that Witty's negligence claim for failure to warn was preempted. *Id*. The court concluded that "Congress intended to preempt state standards for the warnings *that must be given airline passengers*." *Id*. (emphasis added). The court stated, "We hold that the federal regulatory requirements for passenger safety warnings and instructions are exclusive and preempt all state standards and requirements. Congress enacted a pervasive regulatory scheme covering air safety concerns that includes regulation of the warnings and instructions that must be given airline passengers." *Id*. at 385. In concluding that a "pervasive" regulatory scheme existed, the court in *Witty* cited regulations requiring the installation of "no smoking" signs in lavatories and cabins, the use of "fasten seatbelt" signs at certain times during a flight, the requirement that flight attendants give oral briefings to passengers, and the information that must be included on passenger safety cards. *Id*. at 384. All of these regulations are related to passenger safety on a commercial aircraft. Finally, the court held that the claims for failure to warn and for not allowing passengers to exercise their legs were preempted because they would conflict with warnings that instruct passengers to stay in their seats during flight. *Id*.

The *Witty* court did not hold that the entire field of aviation safety is preempted by the FAA. Importantly, the court stated, "we note our intent to decide this case narrowly by addressing the precise issues before us." *Id*. In its narrow holding, the court stated:

> Ultimately, we need not decide whether a state claim for failure to warn passengers of air travel risks is entirely preempted, or, as another circuit has held, is preempted to the extent that a federal standard must be used but that state remedies are available. We hold that, at a minimum, [state claims for failure to warn passengers of air travel risks] must be based on a violation of federally mandated warnings.

*Id*. The court further stated, "We do not, for example, express an opinion as to whether emergency or unplanned situations on flights can form the basis of a state failure to warn claim that is not preempted." *Id*. at 386.

Cessna argues that Monroe's claims are preempted under the Fifth Circuit's decision in *Witty*. Cessna contends that the *Witty* case stands for the proposition "that Congress intended to preempt state standards for warnings and for instructions to be given in the context of aviation tort claims," making Monroe's inadequate warning and instruction claims untenable. Cessna interprets *Witty* such that any product design defect case, including a failure to warn case, is preempted if the plaintiff does not prove that a federal standard of care set by FAA regulations was violated. However, as mentioned above, *Witty* specifically states that it is not holding that a state claim for failure to warn passengers is "preempted to the extent that a federal standard must be used . . . ."[1] *Id*. at 385.

*Witty* is a narrow opinion that only applies to warnings given to passengers on commercial airliners. The Fifth Circuit repeatedly limited its holding to the specific facts and "precise" issues before the court. *Witty* neither stands for the proposition that the field of aviation safety is preempted nor suggests that any of Monroe's state law claims are precluded.

Similarly, the Supreme Court's decision in *City of Burbank v. Lockheed Air Terminal, Inc.*, is a narrow decision holding that the field of aviation noise control, not the field of aviation safety,

---

[1] In *Witty*, the court cites *Abdullah v. American Airlines, Inc.*, 181 F.3d 363, 376 (3d Cir. 1999), as the example of the circuit that decided federal standards must be used in a state claim for failure to warn passengers. 366 F.3d at 385 n.8.

is preempted. *See* 411 U.S. 624, 638-40 (1973). Cessna argues that the Supreme Court recognized Congress's intent to preempt the field of aviation safety in *City of Burbank*. In support of this argument, Cessna cites Justice Rehnquist's dissent, in which he states: "The 1958 Act was intended to consolidate in one agency in the Executive Branch the control over aviation that had previously been diffused within that branch. The paramount substantive concerns of Congress were to regulate federally all aspects of air safety." *Id.* at 644 (Rehnquist, J., dissenting). First, the language from Justice Rehnquist's dissent is not controlling. Second, although Cessna claims that the majority opinion came to the same conclusion, Cessna does not point to any language evidencing such a conclusion. In *City of Burbank*, the majority opinion held that the field of aviation noise control is preempted by federal law. It is inappropriate to construe the majority opinion to have held that the field of aviation safety is also preempted by federal law.

2.   The Act Itself and Its Legislative History

Neither the Federal Aviation Act itself, nor its legislative history evidence an intent by Congress to preempt the entire field of aviation safety. Instead, the Act and its legislative history demonstrate an acknowledgment by Congress that state law tort claims are viable under the Act. For example, the General Aviation Revitalization Act's ("GARA"), a 1994 amendment to the Act, eighteen year statue of repose is evidence that Congress did not intend to preclude state law tort claims. The statute of repose preempts state law to the extent that such law allows a claim to be brought against an aircraft manufacturers more than eighteen years after the plane is first placed into service. 49 U.S.C. § 40101 Note, Section 2(d). GARA's statute of repose implies Congress's recognition of the continuing viability of state law tort claims against aircraft manufacturers.

Furthermore, the ADA, demonstrates that Congress did not intend to preempt the field of

aviation safety. The ADA contains an express preemption clause preempting any state law related to "price, route or services of any air carrier." 49 U.S.C. § 41713(b)(1). The Supreme Court's decision in *Cipollone* creates a standard that implied preemption is not generally applicable to statutes that contain express preemption clauses. *See* 505 U.S. at 517; Pub. *Health Trust of Dade County, Fla. v. Lake Aircraft, Inc.*, 992 F.2d 291, 295 (11th Cir. 1993)(holding that section 1305 of the ADA's express preemption clause evidences Congress's intent not to preempt state law design defect claims against aircraft manufacturers). The Supreme Court's decision in *Geier v. American Honda Motor Co.*, 529 U.S. 861, 869 (2000) limited this standard such that it does not apply to cases where implied conflict preemption exists, however, the standard from *Cipollone* still applies to the implied field preemption analysis.[2]

Cessna argues that the Federal Aviation Act itself evidences Congress's intent to completely occupy the field of aviation safety. Cessna cites language from Justice Jackson's concurrence in *Northwest Airlines v. Minnesota*, 322 U.S. 292, 303 (1944) (Jackson, J., concurring), arguing that it illustrates Congress's intent to preempt the field of aviation safety.[3] Although the cited language illustrates the broad scope of federal regulations over air commerce in general, it does little to

---

[2] The doctrine of implied conflict preemption applies "where it is impossible for a private party to comply with both state and federal requirements, or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *English*, 496 U.S. at 79 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)) (internal citations omitted).

[3] In *Northwest Airlines*, Justice Jackson stated:

> Congress has recognized the national responsibility for regulating air commerce. Federal control is intensive and exclusive. Planes do not wander about in the sky like vagrant clouds. They move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands. The moment a ship taxis onto a runway it is caught up in an elaborate and detailed system of controls. It takes off only by instruction from the control tower, it travels on prescribed beams, it may be diverted from its intended landing, and it obeys signals and orders. Its privileges, rights and protection, so far as transit is concerned, it owes to the Federal Government alone and not any state government.

demonstrate a clear and manifest intent by Congress to preempt the field of aviation safety.

Cessna next argues that the legislative history of the Federal Aviation Act and its amendments demonstrate Congress's intent to preempt the field of aviation safety. Cessna cites a Senate Report that states:

> [A]viation is unique among transportation industries in its relation to the federal government—it is the only one whose operations are conducted almost wholly within the federal jurisdiction, and are subject to little or no regulation by States or local authorities. Thus, the federal government bears virtually complete responsibility for the promotion and supervision of this industry in the public interest.

S. Rep. No. 1811, at 5 (1958). Although this excerpt from the Act's legislative history reflects that the aviation industry is subject to little regulation by the states, it is not evidence of a clear intent by Congress to preempt the field of aviation safety. Cessna also cites a House Report that states: "[t]he Administrator of the new Federal Aviation Agency (1) Would be given full responsibility and authority for the advancement and promulgation of civil aeronautics generally, including promulgation and enforcement of safety regulations." H.R. Rep. No. 2360, at 1 (1958), *as reprinted in* 1958 U.S.C.C.A.N. 3741, 3741. Similarly, this excerpt from the Act's legislative history indicates that Congress intended for the FAA to promulgate and enforce safety regulations but does not evidence a clear intent by Congress to preempt the entire field of aviation safety.

Cessna further relies on a letter from the same House Report, in which the Airways Modernization Board Chairman wrote: "It is essential that only one agency of government, and one agency alone, be responsible for issuing safety regulations if we are to have timely and effective guidelines for safety in aviation." H.R. Rep. No. 2360, *as reprinted in* 1958 U.S.C.C.A.N. 3741, 3761. Reading the cited language in context, it is clear that the Chairman was referring to the benefit of creating a single federal agency to regulate safety as opposed to having two federal agencies

regulating the area, as was the case prior to the enactment of the Act. *See id*. The letter does not show a clear intent by Congress to preempt the field of aviation safety.

Cessna also cites more recent legislative history from GARA arguing that it demonstrates Congress's intent to preempt the field of aviation safety. Cessna cites legislative history that states:

> The Committee paid close attention to the distinguishing characteristics of the general aviation industry. Significant in this regard is the "cradle to grave" Federal regulatory oversight of the industry. General aviation aircraft must meet rigid standards set by the Federal Aviation Administration. Before any aircraft flies for the first time, it must be inspected and certified as airworthy by the FAA. If the aircraft is to be produced in any number, it must meet a further set of FAA-prescribed criteria. FAA oversight does not end with the product itself. Only federally licensed pilots are permitted to fly aircraft and only federally certified mechanics and maintenance facilities can perform certain types of repairs and preventative maintenance. Moreover, these professionals are required to demonstrate continuing proficiency in their respective skills and to update their skills through ongoing training. The FAA also regulates the air routes and fuel handling operations. The FAA and the National Transportation Safety Board are also responsible for reviewing general aviation aircraft accidents. The result of this extensive Federal involvement is an industry whose products are regulated to a degree not comparable to any other.

H.R. Rep. No. 103-525 (II), at 5-6 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 1644, 1647. Although this language demonstrates that the FAA regulates many different areas of aviation, it gives little support to the argument that Congress intended to preempt the entire field of aviation safety. Language from the same House Report, not cited by Cessna, supports the conclusion that Congress did not intend for federal law to preempt state law causes of action. The legislative history of GARA goes on to state:

> Given the conjunction of all these exceptional considerations, the Committee was willing to take the unusual step to preempting State law in this one extremely limited instance. The legislation attempts to strike a fair balance by providing some certainty to manufacturers, which will spur the development of new jobs, while preserving victims' right to bring suit for compensation in certain particularly compelling circumstances. In essence, the bill acknowledges that, for those general aviation aircraft and component parts in service beyond the statute of repose, any

> design or manufacturing defect not prevented or identified by the Federal regulatory process by then should, in most instances, have manifested itself.  The bill thus makes clear that, once a general aviation aircraft or component part crosses the specified age threshold, and unless one of the specified exceptions applies, the possibility of any act or omission on the part of its manufacturer in its capacity as a manufacturer—including any defect in the aircraft or component part—ceases to be material or admissible in any civil action, whether by the plaintiff filing the action to recover damages or by a defendant seeking to reduce its own legal responsibility.
> Under the legislation, victims would also continue to be free to bring suit against pilots, mechanics, base operators, and other responsible parties where their negligence or other misconduct is a proximate cause of the accident.  And in cases where the statute of repose has not expired, State law will continue to govern fully, unfettered by Federal interference.

H.R. Rep. No. 103-525 (II), at 6-7 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 1644, 1648.  This excerpt from GARA's legislative history demonstrates that Congress did not intend to preempt the entire field of aviation safety.  In fact, it is strong support of Congress's intent not to preempt.

3.  Congressional Intent to Preempt the Field Via Regulation

The Federal Aviation Act authorizes and directs the Administrator of the FAA to promulgate rules and regulations to carry out the functions of the administration.  *See* 49 U.S.C. § 106(f)(3)(A).  Title 14 of the Code of Federal Regulations codifies the rules and regulations set forth by the FAA.  There is no evidence of a pervasive regulatory scheme that demonstrates Congress's intent to preempt the entire field of aviation safety.  Rather, several of the applicable regulations at issue in this case are broadly written and demonstrate the lack of a pervasive and precise regulatory scheme.

Cessna claims that the FAA regulations comprehensively govern the field of aviation safety such that they impliedly preempt the standard of care in all state law claims within the field, including Monroe's claims for inadequate warning, instruction, and design.  Monroe argues that there is no evidence of an intent by Congress to preempt the entire field of aviation safety and that the regulations governing the topics at issue in this case are too broad to create a pervasive scheme

as to those particular areas of regulation.

*a. Certification Process*

Prior to manufacturing a new aircraft, a manufacturer must receive a "type certificate" indicating the FAA's approval of a plane's basic design and ensuring that the design complies with all applicable FAA regulations. *See* 49 U.S.C. § 44704(a); 14 C.F.R. § 21.21. Next, a manufacturer must obtain a "production certificate," which indicates that the FAA approves of the manufacturing process that will be used to construct the approved design. *See* 49 U.S.C. § 44704(b); 14 C.F.R. §§ 21.139, 21.143. Finally, before a plane can be put into service, the owner of the aircraft must obtain an "airworthiness certificate" to prove the aircraft is in a safe operating condition and conforms to the type certificate. 49 U.S.C. §44704(c); 14 C.F.R. § 21.183.

The FAA's three-phase certification process for aircraft does not create a pervasive regulatory scheme demonstrating an intent by Congress to preempt either the field of aviation safety or state defective design claims. Cessna argues that the certification process does show an intent by Congress to preempt the field of aviation safety. However, the regulations requiring the certification process do not themselves set out safety and design standards. *See* 14 C.F.R. §§ 21.21, 21.139, 21.143, 21.183. The certification process provides the FAA with a mechanism to ensure that aircraft are in compliance with the safety and design standards set out in other regulations. The regulations that do control the design and safety of an aircraft are broad and provide a non exhaustive list of minimum requirements leaving discretion to the manufacturer. For example, the regulations governing a flight manual's contents leave room for "other information that is necessary for safe operation because of design, operating, or handling characteristics." 14 C.F.R. § 23.1581(a). Similarly, the only regulation addressing aircraft operating procedures requires manufacturers to

provide information on "emergency procedures and other pertinent information necessary for safe operation . . . ." 14 C.F.R. § 23.1585(a). Finally, the regulation that lists the required contents of an aircraft flight manual has a non-exhaustive list. The regulation uses the word "includes" to introduce the list, and FAA regulations defined "includes" as "includes but is not limited to." 14 C.F.R. § 1.3(b)(3). The certification process looks to these safety and design regulations set out by the FAA but does not in and of itself constitute a pervasive regulatory scheme evidencing an intent by Congress to preempt the field of aviation safety.

*b. Bird Strike Regulations*

Cessna further argues that Congress's intent to preempt the field of aviation safety is evidenced in its "comprehensive and detailed bird strike requirements" for different types of aircraft. However, the bird strike regulations as a whole do not evidence an intent by Congress to preempt the field of aviation safety. *See* 14 C.F.R. §§ 23.001 *et seq.*, 25.571, 25.631, 25.775, 25.903, 25.1312, 29.631, 33.76, 33.77. Furthermore, the FAA did not promulgate bird strike regulations that apply to airplanes like the Cessna Model 172S. If anything, the specific lack of bird strike regulations related to the Cessna Model 172S demonstrates the absence of a pervasive regulatory scheme and leaves room for state law claims on the issue.

4. Other Jurisdictions

Circuit courts are split on whether the field of aviation safety is preempted by the Federal Aviation Act. The Supreme Court has yet to directly address the issue. The Tenth and Third Circuits have directly addressed the issue and come to opposite conclusions. As discussed above, the Fifth Circuit has only addressed specific areas of aviation safety and has yet to come to a conclusion as to the entire field.

In *Cleveland v. Piper Aircraft Corp.*, the Tenth Circuit held that Congress did not indicate a "'clear and manifest' intent to occupy the field of airplane safety to the exclusion of state common law." 985 F.2d 1438, 1444 (10th Cir. 1993). In *Cleveland*, the plaintiff Edward Cleveland ("Cleveland") sued Piper Aircraft Corporation ("Piper") for injuries Cleveland suffered while piloting his Piper aircraft. *Id*. at 1441. Cleveland claimed Piper negligently designed the aircraft. *Id*. On remand, the district court granted Piper's motion for summary judgment asserting that state common law claims were preempted by the Federal Aviation Act and its regulations. *Id*. On appeal, the Tenth Circuit reversed the district court's ruling. The Tenth Circuit looked to the Act's savings clause, which states: "Nothing contained in the Act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies," and held that it demonstrated "Congress did not intend to occupy the field of airplane safety to the exclusion of the state common law." *Id*. at 1442 (quoting 49 U.S.C. App. § 1506). In coming to this conclusion, the court relied on the Supreme Court's holding in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) and the statutory interpretation tool *expressio unius est exclusio alterius*, which suggests that Congress's definition of the preemptive reach of a statute implies that matters beyond the reach are not preempted. *Cleveland*, 985 F.2d at 1443. The Tenth Circuit concluded that Congress did not intend for the Act to have general preemptive reach because Congress amended the Act in 1978 with the ADA to include an express preemption provision governing rates and routes and services of any air carrier. *Id*. at 1444. The Tenth Circuit later recognized that its analysis of the express preemption clause in *Cleveland* was narrowed by the Supreme Court's ruling in *Geier*, which held that an express preemption clause did not foreclose an implied conflict preemption analysis. *See Choate v. Champion Home Builders Co.*, 222 F.3d 788,

14

794 n.8 (10th Cir. 2000).

In *Cleveland*, the Tenth Circuit also held that the relevant federal regulations did not conflict with the state common law duties at issue in the case. 985 F.2d at 1444-45. Piper argued that the federal regulations regarding the design of the plane preempted claims for defective design. *Id*. at 1445. The court held that no conflict existed because Piper could have improved the design of the aircraft and been in compliance with the federal regulations. *See id*. The court also rejected Piper's argument that the FAA's approval of the airplane's design preempted Cleveland's claims. *See id*. at 1446. The court held that an FAA design certification "is, by its very nature, a minimum check on safety." *Id.*

In *Abdullah v. American Airlines, Inc.*, the Third Circuit expressly disagreed with the Tenth Circuit's holding in *Cleveland* and held that the entire field of aviation safety is preempted by federal law. *See* 181 F.3d 363, 365 (3d Cir. 1999). In *Abdullah*, several passengers were injured on an American Airlines flight when the aircraft encountered severe turbulence. *Id*. The injured passengers sued American Airlines alleging negligence for failing to avoid turbulent conditions and for failing to warn the passengers of turbulence. *See id*. The district court held that the FAA impliedly preempted "state and territorial regulation of aviation safety and standards of care for pilots, flight attendants, and passengers." *Id*. at 366. The Third Circuit concluded that the legislative history of the Federal Aviation Act and its judicial interpretation indicated Congress's intent to preempt the field of aviation safety. *See id*. at 371. The Third Circuit cited the legislative history from the enactment of the Federal Aviation Act, relied on by Cessna above, that stated:

> [A]viation is unique among transportation industries in its relation to the federal government—it is the only one whose operations are conducted almost wholly within the federal jurisdiction, and are subject to little or no regulation by States or local

> authorities. Thus, the federal government bears virtually complete responsibility for the promotion and supervision of this industry in the public interest.

*Id.* at 369 (citing S. Rep. No. 1811, 85th Cong., 2d Sess. 5 (1958)). The Third Circuit also relied on a House Report, relied on by Cessna above, that suggests one purpose of the Act was to give "[t]he Administrator of the new Federal Aviation Agency . . . full responsibility and authority for the advancement and promulgation of civil aeronautics generally, including promulgation and enforcement of safety regulations." *Id*. (citing H.R. Rep. no. 2360, at 1, *as reprinted in* 1958 U.S.C.C.A.N. 3741, 3741)(internal footnotes omitted). The Third Circuit further supported its conclusion with a broad reading of the Supreme Court's narrow decision in *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624 (1973), concluding that "the Supreme Court held that Congress's consolidation of control of aviation in one agency indicated its intent to federally preempt aviation safety."[4] *See id*.

Although the Court respects the appellate courts and their respective opinions, neither is controlling in this jurisdiction. However, *Cleveland* is more consistent with the facts of the present case in that it involves an individual bringing claims against a general aviation manufacturer for negligence and design defects, whereas *Abdullah* involves claims brought by commercial airline passengers against a large commercial airline carrier for personal injury. Furthermore, in addressing Cessna's arguments related to the Act's legislative history and the Supreme Court's decision in *City of Burbank* above, the Court revealed significant shortcomings in the Third Circuit's analysis. Although certain aspects of the express preemption provision analysis in *Cleveland* have been limited since the case was decided, *Cleveland* is still good law in the Tenth Circuit for the proposition that

---

[4] *City of Burbank* held that the field of aviation noise control was preempted, not that the field of aviation safety was preempted. *See* 411 U.S. at 638-40.

the FAA does not preempt the field of aviation safety. The Court is not bound by either opinion, but *Cleveland* is factually similar and better reasoned.

5.  Conclusion

The field of aviation safety is not preempted by the Federal Aviation Act. There is not sufficient evidence of a clear intent by Congress to preempt, neither through a pervasive scheme of federal regulations set forth by the FAA nor within the Act's text and legislative history. Although some courts have found that the entire field of aviation safety is preempted by the Federal Aviation Act, the Fifth Circuit has not come to the same conclusion. *Witty* does not stand for the proposition that the entire field of aviation safety is preempted or that the state standard of care for negligence and product liability claims against airplane manufacturers are preempted by federal law. Accordingly, neither the field of aviation safety nor negligence and strict product liability claims against aircraft manufacturers are impliedly preempted by federal law in the Fifth Circuit. The Court now turns to the issue of conflict preemption.

**B. Conflict Preemption**

The doctrine of conflict preemption applies "where it is impossible for a private party to comply with both state and federal requirements, or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *English*, 496 U.S. at 79 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)) (internal citations omitted). Monroe claims that the causes of action alleged in this case do not conflict with the broad minimum standards set out by relevant federal regulations, and Cessna does not specifically argue that the state causes of action conflict with the relevant federal regulations. There is not a conflict between the state causes of action alleged by Monroe and the federal regulations at issue in the case such that the causes of

action are preempted by implied conflict preemption.

## MONROE'S OPPOSITION TO CESSNA'S AMENDED MOTION TO DISMISS

On August 31, 2005 Cessna filed its Original Answer (Docket No. 8) containing its original Motion to Dismiss under Rule 12 of the Federal Rules of Civil Procedure. The Rule 12 Motion only stated that, "the Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted." On September 9, 2005, Monroe filed a brief response in opposition to Cessna's Motion. Subsequently, on September 22, 2005, Cessna filed its Amended Motion to Dismiss that is now before the Court. Monroe claims that Cessna's amended motion was untimely under Eastern District Local Rule CV-7(f) and should not be considered.

Local Rule CV-7(c) requires that a "motion and any briefing be contained in one document." Cessna's Original Answer did not contain any briefing in support of its Motion to Dismiss. Accordingly, the Court denies Cessna's original Motion to Dismiss based on its substantive inadequacy. According to Rule 12(h)(2) of the Federal Rules of Civil Procedure, a party may raise the defense for failure to state a claim under Rule 12(b)(6) at any time. Accordingly, the Court considers Cessna's Amended Motion to Dismiss as though it were an original motion.[5] Furthermore, Local Rule CV-7(f) applies to amendments to reply briefs and not live motions. Local Rule CV-7(f) does not bar the Court from considering Cessna's Motion to Dismiss.

## EVIDENCE ATTACHED TO PLAINTIFF'S RESPONSE

Cessna complains in its reply brief that Plaintiffs have attached an unauthorized portion of a Cessna 172S Airman's Information Manual. Cessna cites *Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir.

---

[5] Although the motion before the Court is titled "Amended Motion to Dismiss Under Rule 12(b)(6)," it does not actually "amend" the earlier motion, since the earlier motion was entirely lacking in substance.

1996), arguing the manual is inappropriate evidence to a 12(b)(6) motion and should be stricken from the record and not considered by this Court. In *Baker*, the Fifth Circuit stated that a court should not look beyond the pleadings when ruling on a motion to dismiss for failure to state a claim. 75 F.3d at 197. Therefore, the manual attached to Monroe's response brief is inappropriate in the context of a motion to dismiss under Rule 12(b)(6). Accordingly, the evidence is stricken and was not considered by the Court in ruling on the motion.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Cessna's Motion to Dismiss Under Rule 12(b)(6).

**So ORDERED and SIGNED this 17th day of February, 2006.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**